## STEEL *v.* PHENIX INS. CO. OF BROOKLYN.

### (*Circuit Court, D. Oregon.* October 19, 1891.)

1. **WAIVER OF LIMITATION WITHIN WHICH TO SUE ON A POLICY OF FIRE INSURANCE.**
   A 12-months limitation in a policy of fire insurance, within which the assured must sue for a loss, is not waived by conduct of the insurance company calculated to make the former believe that the loss will be paid, provided such conduct ceases, so as to leave a reasonable time within which to sue; and 7 months of the 12 is considered ample time.

2. **LIMITATION FROM THE DATE OF FIRE.**
   A limitation of 12 months from the date of the fire, within which to sue on a policy of fire insurance, commences to run from such date. The ruling on this point in 11 Sawy. 276, 25 Fed. Rep. 296, followed.

(*Syllabus by the Court.*)

At Law.

*Mr. George H. Williams*, for plaintiff.
*Mr. L. B. Cox* and *Mr. W. S. Goodfellow*, for defendant.

DEADY, J. On April 21, 1884, the defendant, in consideration of the sum of $300 paid to it by E. S. Kearney, insured him as "Receiver for *Holladay* v. *Holladay*," in the sum of $5,000, against loss or damage by fire on a half interest in the Clarendon hotel and furniture, for the term of one year from the 27th of the month, and, on the night of May 19th following, the property was destroyed by fire.

This suit was brought on July 10, 1885, by D. P. Thompson, as the successor of Kearney in the receivership, to reform the policy, which it is alleged in the bill was made payable to Kearney, "instead of the receiver in the suit of *Holladay* v. *Holladay*, and his successors, or the benefit of whom it might concern."

There was a demurrer to the bill, on the ground that the plaintiff's right of action was barred, because the suit was not commenced "within twelve months next after the date of the fire from which the loss occurred," as provided in the policy.

The demurrer was sustained, (11 Sawy. 276, 25 Fed. Rep. 296,) and the receiver filed an amended bill, alleging therein conduct on the part of the defendant which he claimed amounted to a waiver of this limitation. There was a demurrer to this bill also, which was sustained, and the suit dismissed.

On July 12, 1886, Thompson was removed from the receivership, and George W. Weidler and Joseph Holladay were appointed in his

place. Thereafter the suit of *Holladay* v. *Holladay* was decided in favor of Ben Holladay, and the receivers were discharged. On July 8, 1887, Ben Holladay died, and on June 3, 1889, James Steel, his administrator, was made plaintiff.

The case was appealed to the supreme court, where the final decree of this court was reversed, on the ground that the allegations of the amended bill showed a waiver of the limitation as to the time of bringing the suit, and the case was sent back for further proceedings accordingly.

Here the defendant answered, denying the alleged conduct, and setting up the 12-months limitation on the right to sue, to which the plaintiff replied.

The plaintiff took testimony in support of the amended bill.

The defendant took none, and the case was argued and submitted on the pleadings and evidence.

The case made in the amended bill, on which the supreme court reversed the decree of this court, is not supported by the proof. Mr. Thompson was examined as a witness, and he plainly admits that he was explicitly informed by the agent of the defendant, at least seven months before the expiration of the twelve months, that the defendant would not pay the claim. All negotiations on the subject ceased thereafter. And, on being asked if he delayed bringing suit on account of the statements of the agent, he answered: "I cannot now say; I do not remember."

The contention of the plaintiff appears to be that, if the receiver was delayed in bringing this suit on account of the assurance that the matter would be settled, for however short a time, the 12-months limitation is gone,—waived,—or can only be counted from the termination of such assurance.

But I do not so understand the law. The ruling of the supreme court in this case (136 U. S. 299, 10 Sup. Ct. Rep. 1019) implies that, if the conduct of the defendant prevented the plaintiff from bringing suit within twelve months from the date of the fire, it cannot avail itself of such limitation. But suppose the plaintiff is only prevented by such means from bringing suit for three months after he was otherwise entitled to, cannot the defendant avail itself of the other seven months of the limitation? What was to hinder this suit being brought within this seven months? The parties might have agreed by the policy that the suit should be brought in six months after the date of the fire. *Reddesbarger* v. *Insurance Co.*, 7 Wall. 389; *Davidson* v. *Insurance Co.*, 4 Sawy. 594; May, Ins. § 478.

If the conduct of the defendant only prevented this suit from being brought for five months after the date of the fire, it is only a waiver of so much of the limitation.

The question, then, is, did there remain of the limitation a reasonable time within which to bring this suit? and this admits of but one answer. The time (seven months) was ample. Indeed, under the circumstances, one month was sufficient. The fact is, as the history of the case shows and the court knows, this suit was brought upon the theory that the rul-

ing of this court in *Spare* v. *Insurance Co.*, 9 Sawy. 142, 17 Fed. Rep. 568, construing the phrase "after the loss occurs" as meaning after the loss was ascertained and payable, and not the date of the fire. Accordingly, the original bill contained no allegations tending to show a waiver of the limitation by the defendant.

But the court held that the time specified in the policy at which the limitation was to commence to run (the date of the fire) was not ambiguous, and must be taken to have effect as it read.

Thereupon the amended bill was filed, in which the attempt was made to avoid the difficulty by setting up a waiver of the limitation, alleging, among other things, that the receiver was delayed for "some time," whatever that may mean, in bringing his suit, by assurances from the defendant that the matter would be settled.

More than this, the records of this court show that the receiver brought a similar suit to reform and enforce this policy on October 21, 1884, just five months and two days from the date of the fire. On June 24, 1885, a demurrer was sustained to the bill, because it did not appear therefrom that the court appointing the receiver had authorized the suit to be brought; and on July 10, 1885, he dismissed that suit, and brought the present one, in which such authority is alleged.

Of course, in the face of these facts, there could not be any truth in the allegations of the amended bill as to the cause of the delay in bringing this suit.

The statements in the bill on this subject, which are denied by the answer, seem to have been the work of the attorney, which the receiver in his testimony utterly fails to support.

For instance, it is alleged in the amended bill that the agent "demanded" the payment of the premium; that the agent was authorized to assure the plaintiff that the sum would be paid, and that he delayed bringing this suit on account of such assurance. But the testimony of Mr. Thompson is that the agent said it would facilitate the settlement if it were paid, and the plaintiff paid it. Besides, the premium was due, and should have been paid on the delivery of the policy, whether the insurance was in favor of Kearney alone, or to him and his successors, or whether the loss occurred during his receivership or that of Mr. Thompson. He also testifies that while the agent said he thought the company would pay the amount, "he was not authorized to say;" and, in reply to the question, "Did you delay bringing a suit in consequence of the statement made to you by the agent?" answered: "I cannot now say; I do not remember;" and also that he learned definitely from the defendant, within one, two, or three months after the expiration of the sixty days, that it would not pay the demand.

There was no waiver of the 12-months limitation by the defendant, nor did the plaintiff ever so regard its conduct.

The only other question in the case is, when does the 12-months limitation commence to run,—from the date of the fire, or from the expiration of 60 days after proofs of loss were furnished?

Numerous authorities *pro* and *con* have been produced on the question

when the limitation commences, in case the action is required to be brought within 12 months or other certain period from the time "the loss occurs;" and I still think, as I said in *Spare* v. *Insurance Co.*, 9 Sawy. 145, 17 Fed. Rep. 568, that the weight of authority is in favor of the conclusion that the "loss occurs," not at the date of the fire, but thereafter, when the same is ascertained and established.

This construction of the phrase naturally led the insurance companies to the use of language in naming the date or event from which the limitation should commence which would not admit of doubt as to its meaning,—"twelve months next after the date of the fire from which the loss shall occur" was substituted for "twelve months next after the loss shall occur."

No case has been found that gives any but a literal construction to the words "date of the fire," and in my judgment none will be.

On this point I am constrained to follow my judgment given in this case (11 Sawy. 276, 25 Fed. Rep. 296) when I first heard it. It is there said:

"It is well established that a stipulation limiting the time within which an action may be brought on a policy of insurance is valid and binding on the parties thereto; but that, if it is ambiguous, either in itself, or taken in connection with other provisions or stipulations in the policy, the ambiguity must be resolved in favor of the assured. See *Spare* v. *Insurance Co.*, 9 Sawy. 145, 17 Fed. Rep. 568, and cases there cited. The stipulation for limitation in this policy is, considered by itself, plain, and susceptible of but one meaning; and, putting aside the provision concerning an award as inapplicable in this instance, there is nothing in the policy to qualify or render it doubtful."

On this view of the case there is no need to consider the question of reforming the policy; for, as was said in this case, (11 Sawy. 279, 25 Fed. Rep. 298:) "The court will not reform an instrument merely for the sake of reforming it, but only to enable a party to assert some right thereunder." And this statement is indorsed by Mr. Justice HARLAN in his opinion in this case, (136 U. S. 296, 10 Sup. Ct. Rep. 1019;) also, Mr. Justice FIELD in *Davidson* v. *Insurance Co.*, 4 Sawy. 594, said the same thing.

On the argument counsel for the plaintiff contended that "this is not a suit upon the policy, but a suit to enforce a specific performance of the contract between the parties;" citing *Hay* v. *Insurance Co.*, 77 N. Y. 235.

In that case there was a clause in the policy limiting the time within which a suit might be brought to enforce the same. This clause was alleged to have been inserted in the policy by fraud or mistake, and the object of the suit was to have it stricken out, or to compel the defendant to give a policy without such clause, according to the agreement of the parties. The answer was that the suit was barred by lapse of time. The court very properly held that the disputed limitation did not apply, saying that the suit was "to compel the defendant to give a policy according to the agreement of the parties."

When that policy was reformed by striking out the special limitation, a suit could be brought on it to enforce it, if brought within the

period prescribed by the general statute of limitations. But in this, assuming that the court would decree a reformation of the policy, still it could not be enforced, on account of the special limitation therein. The court will not reform a policy merely for the sake of reforming, when no action can be maintained on it when reformed. There is no analogy between the two cases.

The bill must be dismissed, and it is so ordered.