## Isaac Aboaf, Plaintiff and Appellee, *v.* Phoenix Fire Insurance Company, Defendant and Appellant.

No. 3468. Argued April 23, 1925.—Decided March, 5, 1926.

*Felipe Colón* and *Jaime Sifre* for the appellant. *José Tous Soto* and *R. Pérez Marchand* for the appellee.

Mr. Justice Hutchison delivered the opinion of the court.

Appellant-defendant says that—

"1.—The trial court erred in overruling the demurrer to the complaint alleging that the cause of action had prescribed.

"2.—The trial court erred in rendering judgment on the merits in favor of the plaintiff, inasmuch as the cause of action had prescribed.

"3.—The trial court erred in admitting as evidence of the capacity of Irwin Allan Lehr and Samuel Isaacs, administrators, the certificate issued by the clerk of the surrogate's court.

"4.—The trial court erred in not holding that the plaintiff had violated section 8 of the insurance contract, and that therefore such contract did not bind the defendant.

"5.—The trial court erred in not holding that the plaintiff had violated section 13 of the insurance contract, and that such contract was not therefore binding on the defendant.

"6.—The trial court erred in estimating that at the time of the fire there were merchandise and furniture to the value of $11,000.00 in the store of the plaintiff and in rendering judgment as it did for such amount.

"7.—The trial court erred in not holding that the fire and the damages caused thereby were due to an explosion not caused by coal gas.

"8.—The trial court erred in not holding that the plaintiff had violated the condition contained in the insurance contract regarding books and inventories in iron safes.

"9.—The trial court erred in admitting as evidence the ledger (Exhibit B) and the journal (Exhibit N).

"10.—The trial court erred in rendering judgment in favor of the plaintiff for the amount of the policy without taking into account the stock that was saved from the fire."

■ Clause 19 of the policy upon which this action was based reads as follows:

"After one year from the date of the fire the company is relieved of the obligation to pay the losses and damages caused by the said fire, unless the matter is in process of arbitration or a suit has been brought in connection with the claim."

The fire occurred on May 27, 1922. On February 21, 1923, plaintiff filed suit in the Federal Court. On May 5, 1923, the United States District Judge disposed of a jurisdictional question and of the action so instituted in the following manner:

"In this case a demurrer was filed by the attorneys for the defendants upon two grounds. First: That this court has no jurisdiction because it is alleged in the complaint that the plaintiff is a citizen of the Republic of France domiciled outside of the Island of Porto Rico, and that the defendant is a joint stock company, organized under the laws of the state of Connecticut; second: That

because the defendant is a joint stock company the question of federal jurisdiction depends upon the citizenship of the members of such joint stock company and that the said joint stock company cannot be sued in a federal court in its associate name. In support of the demurrer a brief has been submitted by the attorneys for the defendant and upon calling the attorney for the plaintiff for his argument in opposition to the demurrer, he stated to the court that he did not desire to argue the demurrer, and that he was willing that this present action should be dismissed without prejudice to his right to begin a suit in behalf of his client against this same defendant in the proper Insular Court of Porto Rico and, thereupon, I hold that inasmuch as the defendant denies the jurisdiction of this court and, inasmuch as the plaintiff is willing that this case be dismissed without prejudice, it is so ordered."

On July 26, 1923, fourteen months after the fire and more than two months after the dismissal of the first action, plaintiff filed this suit in the Insular District Court.

"The parties may by express stipulation limit the time within which the action may be brought, and such provision is a valid and binding one, though the period may be shorter than that provided for in the statute of limitations. Where the policy contains a stipulation of this nature, the action must be brought within the time limited, and if not so brought, the provision is a complete bar to the action in the absence of any waiver of the clause." 5 Joyce, page 5346.

"The action mentioned, which must be commenced within the twelve months, is the one which is prosecuted to judgment. The failure of a previous action from any cause cannot alter the case. The contract declares that an action shall not be sustained, unless such action, not some previous action, shall be commenced within the period designated. It makes no provision for any exception in the event of the failure of an action commenced, and the court cannot insert one without changing the contract." *Riddlesbarger* v. *Hartford Insurance Co.*, 74 U. S. 386.

The language of clause 19, *supra*, is even more specific. It reads as though it had been deliberately worded in order to anticipate just such a question as has developed in the instant case, and to leave no room for construction or misunderstanding. It relieves the company from all liability at

the expiration of the specified period "unless an arbitration or a judicial proceeding is pending (*en tramitación*)."

"The general rule is that even though a timely action is brought, yet a second action commenced after a contract bar has become complete cannot be maintained, although the first action has been terminated *by dismissal,* or nonsuit so that no trial has been had on the merits of the case. *Statutory exceptions* allowing second actions under the statute of limitation do not ordinarily apply so as to save the right to bring a second action, after the contract period on failure of the first action, although the contrary has been held." 26 C. J. 479, 480.

"The weight of authority seems to support the rule that if a suit is brought within the time provided in the policy, but is dismissed or discontinued for any reason, and a subsequent suit is brought after the expiration of the time limited, though perhaps immediately upon the dismissal or discontinuance of the first suit, the second action cannot be maintained. The courts which have held this doctrine maintain that the policy does not provide that no first action shall be sustainable unless commenced within the time limited, but that no action shall be sustained unless commenced within the time. The policy refers to the action in which recovery is sought, and it is intended to include any action commenced upon the policy after the expiration of the period of limitation, which if it were not for such clause might be prosecuted to a judgment. In a case in Ohio, however, it is held that where a fire policy contains a condition that 'all claims under this policy are barred unless prosecuted within one year from the date of the loss,' that condition is performed if within a year a suit is brought in good faith for the purpose of enforcing the claim, and if the assured for good cause abandons that suit and promptly brings another, although after the year has elapsed, he is not barred of his 'right to recover.' " 5 Joyce on Insurance, 5371.

"If a statute of limitation contains an exception limiting its operation, as, for instance, where it provides that if an action is commenced within the statutory period, and for any reason the plaintiff suffers a nonsuit, he may commence another action within one year, in such case it has been contended that the exception will permit the plaintiff who has suffered a nonsuit in an action on the policy to bring a new action within a year, notwithstanding the policy stipulates that no action shall be sustained unless commenced within a specified time after the loss. The courts, however, hold that such an exception in the statute has no effect upon the stipulation in the

contract, and will not prevent the bar of the agreement. The rights of the parties are to be determined by the contract, and since by its terms the statute has no operation, neither will the exceptions to the statute.'' 5 Joyce on Insurance, 5372.

The only exception to the general rule seems to be found in cases wherein, after dismissal of the first action without fault of plaintiff, a second suit is filed without delay although after expiration of the prescribed period.

In the instant case at least three weeks intervened between the date of the dismissal of the first action in the Federal Court and the expiration of the period prescribed in the policy.

Appellee says:

''. . . Only a casual study on the part of the honorable judges of the correspondence had between the parties regarding the details of this claim which are copied in the record is necessary to prove clearly that the insurance company continually asked for time and made dilatory proposals to the plaintiff to carry out alleged investigation under assurances that the same would facilitate compliance with the obligations of the contract entered into with the plaintiff-appellee.

''Up to the time that the plaintiff appeared before the Federal Court the parties conducted negotiations which prevented the claimant from proceeding judicially. And from the moment the plaintiff agreed to withdraw his complaint in the Federal Court, defendant-appellant made still greater efforts to delay the legal action which eventually had to take place. Would not this suggest that the propositions made to the plaintiff and to his attorneys to delay judicial action because they were proceeding to an examination of the accounts and other details of the claim, were misleading?''

The transcript of the evidence contains several hundred pages. A vague and general reference to the correspondence contained in such a record imposes upon this court no obligation to search the same for data in support of an equally vague and general statement as to what such data would disclose when found.

Nevertheless we have made some effort to ascertain

whether or not the contention referred to has any foundation in fact.

The correspondence in question seems to consist, for the most part, of letters and telegrams from the attorney in fact of plaintiff and from his attorneys, with little or nothing from the defendant. It covers a period from May to December, 1922, with an interval of silence extending over a period of several months, that is to say, from June to October.

We find no indication either in the complaint or in this correspondence of any such conduct or attitude on the part of defendant as now apparently for the first time is sought to be imputed to it.

On the second day after the fire the parties entered into and executed the following:

"AGREEMENT.

"It is hereby mutually understood and agreed by and between Isaac Aboaf, of Ponce, ·P. R., of the first part and the Phoenix Insurance Company, of Hartford, Connecticut, of the second part, that any action taken by said party of the second part in investigating the cause of fire or investigating and ascertaining the amount of loss and damage to the property of the party of the first part, caused by fire alleged to have occurred on May 27th, 1922, shall not waive or invalidate any of the conditions of policy No. 5009 of the said Phoenix Fire Insurance Company, held by the party of the first part, and shall not waive or invalidate any rights whatever of either of the parties to this agreement.

"The intent of this agreement is to preserve the rights of all parties hereto and provide for an investigation of the fire and the determination of the amount of the loss or damage, without regard to the liability of the party of the second part.

"Signed in triplicate at the City of Ponce, P. R., this 29th day of May, 1922.—

    (Signed)   Isaac Aboaf,      Phoenix Insurance Co.
               per Manuel Royo,      F. A. C. Hastrup.
                  Assured.           By: A. Stetting,
                                         Adjuster."

On June 3, 1922, the adjuster was informed that the matter had been placed in the hands of plaintiff's attorneys. On June 6th this notice was confirmed by a letter from the said attorneys. On November 29, 1922, counsel for plaintiff sent defendant the following message:

"Ponce, 2 Nov.,' 22—Hastrup, San Juan, P. R. As attorneys for Isaac Aboaf we require to know reasons for delay. Liquidation of claim necessary. Answer frankly so that we may proceed in accordance with the law and the policy. Tous Soto and Pérez Marchand."

This was followed on December 27th by another dispatch, to wit:

"Ponce, 27 Dec. 1922. H. C. Hastrup, San Juan. Client Aboaf instructs us to bring suit on policies. Unjustifiable delay in liquidation is equivalent to refusal on part of company. We shall take action end of this month. Tous Soto and Pérez Marchand."

Mere silence in the face of such communications can hardly be regarded as conducive to further delay in the institution of the contemplated action. And if defendant in response thereto gave any definite assurance of probable payment, settlement or favorable action upon the pending claim, or even manifested a disposition to resort to dilatory tactics, it is fair to assume that plaintiff would have produced such replies at the trial. Certainly plaintiff must have known that further negotiations were useless at the time that suit was filed in the Federal Court, if not at the time of the telegraphic ultimatum last above mentioned as clearly implied therein and, in any event, he had ample opportunity to begin the present action during the three weeks that intervened between the date of the dismissal of the former suit and the expiration of the term prescribed in the policy.

What the Supreme Court of the United States said in *Thompson* v. *Phoenix Insurance Co.*, 136 U. S. 287, 299, was this:

"If, as the allegations of the amended bill imply, the failure of

the plaintiff to sue within the time prescribed by the policy, computing the time from the date of the fire,, was due to the conduct of the company, it cannot avail itself of the limitation of twelve months. Curtis v. Home Ins. Co., 1 Bissell, 484, 487; Ide v. Phoenix Ins. Co., 2 Bissell 333; Grant v. Lexington Ins. Co., 5 Indiana 23, 25; Mickey v. Burlington Ins. Co., 35 Iowa 174, 180.''

In *Phoenix Insurance Co. v. Rad Bila Hora,* 59 N. W. 752, 755, also relied upon by plaintiff, the Supreme Court of Nebraska, in dealing with a clause specifying a period of six months, said:

''The court instructed the jury upon the subject as follows: 'If you find from the evidence that the defendant, by any conduct or statement of its adjusting agent, while attempting to adjust the said loss, did that which was calculated to induce a reasonable belief in the plaintiff that the claim would be paid without suit, and that the plaintiff was reasonably induced by such conduct of defendant and proposition to settlement to withhold bringing suit until after six months after said loss, then defendant would be deemed to have waived the right to insist upon requiring such suit to be brought within six months from the date of the loss.' The evidence fairly tended to support this instruction. Person's undoubtedly authorized to represent the company to some extent and for some purposes in the adjustment of the loss were shown to have conducted negotiations and made proposals for settlement until after the expiration of six months. We have no doubt that, if such a provision is of any validity, the company may, by its conduct, estop itself from claiming the benefit thereof; and that when the company, by holding out prospects of an amicable settlement, induces the plaintiff to forbear suit until after the expiration of the time limited, the company is thereby estopped from claiming the benefit of the special limitation. Thompson v. Insurance Co., 136 U. S. 287, 10 Sup. Court 1019; Steel v. Insurance Co., 47 Fed. 863; Martin v. Insurance Co., 44 N. J. Law, 485; Ripley v. Insurance Co., 30 N. Y. 136; Blanks v. Insurance Co., 36 La. Ann. 599; Insurance Co. v. McGregor, 63 Texas 399; Bish v. Insurance Co., 69 Iowa, 184, 28 N. W. 553; Insurance Co. v. Myer, 93 Ill. 271. All of the cases above cited fully recognize the principle and sustain the instruction given by the trial court. Some of them hold that, under the facts of the cases under consideration, there was no estoppel; but those cases were either where there was a denial of liability accompanying an offer to compromise, or cases where there was distinct denial of liability, following negotiations for

a settlement, and within such a period that there was a reasonable time after such denial to begin the suit before the period of limitation expired.''

We are also referred to *McKay* v. *Insurance Co.*, 35 Iowa 174, 14 Am. State Rep. 474. We do not have access to Vol. 35 of the Iowa Reports and do not find the case in 14 Am. State Reports.

Other cases cited to show that the cause of action did not accrue until after refusal to pay are: *Firemen's Fund Insurance Co.* v. *Buckstaff*, 38 Neb. 150, 56 N.E. 697, 41 Am. State Rep. 727; *German Ins. Co.* v. *Davis*, 40 Neb. 700, 59 N. W. 698; *Hong Sling* v. *Ins. Co.*, 8 Utah, 135, 30 Pac. 307; *Read* v. *Ins. Co.*, 103 Iowa, 307, 72 N. W. 665, 64 Am. St. Rep. 180; *Case* v. *Ins. Co.*, 83 Cal. 473, 23 Pac. 534, 8 L.R.A. 48.

Upon this point it will suffice to say that appellant, anticipating this theory, asserts that in the instant case there is no basis in fact for the application of any such doctrine and that notwithstanding this direct challenge appellee has not indicated any clause of the policy nor any fact in evidence tending to contradict the claim of appellant in this regard.

█ The court below should have sustained the demurrer to the complaint and, it appearing even more clearly from the evidence than from the complaint itself that the action was barred, should not have rendered judgment for the plaintiff upon the merits.

The error, if any, in admitting the certificate of the clerk of the surrogate's court would result only in the ordering of a new trial and, in view of the conclusions reached with reference to the foregoing and other more fundamental questions, need not be discussed.

Article 8 of the policy reads thus:

''Art. 8.—If in the course of the contract one or more of the modifications specified in the present article should take place the insured shall not be entitled to any compensation for the objects, subject of such modifications, unless, prior to the fire, he shall have

obtained the written authorization for such changes, set forth in the policy by the company or by its authorized representatives.

"(a) Changes or modifications in trade or in industry carried on in insured buildings or buildings containing the objects insured: any changes or modifications whatsoever in the use of said buildings or of their special conditions that may possibly increase fire risks."

That the assured without the knowledge and consent of defendant subleased a portion of the building containing the goods insured and that the sublessee kept in the part of the building so subleased considerable quantities of alcoholina, a substitute for gasoline used as such in automobiles, is not open to argument.

The only contention of appellee seems to be that the fire did not originate in nor reach the part of the building where such inflammable material was kept.

No authority is cited in support of the proposition that in such circumstances the clause in question is inapplicable or inoperative, notwithstanding the fact that appellant here also anticipated this suggestion, citing in the brief *Bastian v. Assurance Co.*, 143 Cal. 287; *Williams* v. *Peoples Fire Ins. Co.*, 57 N. Y. 274; 26 C. J. 220.

Article 13 of the policy follows:

"In case the claim for damages by the insured should be in any way fraudulent; if, in support of said claim spurious testimony should be given or used; if fraudulent means or documents should be used by the insured or by third persons cooperating in the interest of said insured for the purpose of obtaining any benefit based on this policy; if the fire should have been wilfully caused by the insured or with his acquiescence; if the insured or any other person acting in his interest should put any obstacle in the way of the exercise by the company of the rights set forth in article 12 or attempt to prevent the same; in case the company should refuse to entertain the claim for damages, unless a civil legal suit be brought before the court within the three months following the day of its refusal to admit the claim or the date of the decision of the arbitrator or arbitrators or of the third arbitrator, always provided that such arbitration be consummated in accordance with the provisions of section 18 of this condition, the insured or his successors in interest shall be deprived of all right under this policy."

Plaintiff presented a claim for the total amount named in the policy, stating that the value of the stock on hand at the time of the fire amounted to $14,827 and some cents. What remained of these goods after the fire could not have been worth one-tenth of that amount before the fire and little or nothing of value was in fact destroyed.

Plaintiff's attorney in fact, answering under oath a questionaire submitted by defendant, made a negative response to the following question:

"Was there gasoline, alcohol, powder, dynamite or any other explosive stored in the building occupied by you?"

In the subleased portion of the building there was a thirty-gallon container out of which alcoholina was drawn and sold at retail. There was also a larger drum of one hundred gallons capacity from which the smaller receptacle was replenished from time to time.

The evidence points persuasively to an explosion of gasoline or kerosene in the upper story of the premises occupied by and under the exclusive control of assured as the immediate cause of the fire.

The system of bookkeeping employed and the manner in which the so-called books were kept were not such as to inspire confidence in the face of the facts revealed as a result of the prompt extinguishment of the fire.

A deliberate intention to defraud is the only logical inference to be drawn from all the circumstances.

"There is usually a provision in policies of fire insurance that any fraud or false swearing by insured relating to the loss, or in the proofs of loss, will forfeit any right of recovery under the policy. Such a provision is valid and enforceable, and in order to defend on this ground the insurer is not required to tender back to insured the premium which he has paid. *Accordingly a fraudulent over-valuation in the proofs or statements of loss will defeat recovery under the policy.*" 26 C. J. 382.

"While it has been held that an agent is not a legal representative of insured within a provision of the policy avoiding it in case of

fraud or false swearing by insured or his legal representatives, yet fraud or false swearing on the part of an agent to whom insured has unreservedly delegated the duty of making proofs of loss is ordinarily imputable to insured and hence defeats a recovery.'' 26 C. J. 386, and cases there cited.

That the court below erred, as indicated in the 6th specification of the assignment, follows from the fact that so little was left after the fire and that less was consumed thereby.

■ The policy also provided that—

''Art. 7.—In the absence of express stipulation in the policy the following are excluded in this case:

\*        \*        \*        \*        \*        \*        \*

'' (H) The losses or damages caused by any explosion. It is nevertheless understood that the company, as in the case of damages caused by fire, will respond for the losses and damages that an explosion of coal gas for lighting or domestic purposes may cause in any building that is not dependent upon a gas factory or utilized in any way for the making of gas.''

Whether or not defendant would be liable for loss occasioned by fire resulting from an explosion of gasoline, that is to say, in the instant case, in the absence of other conditions, is a matter that need not be determined. But see 20 C. J. pp. 344 and 345.

In view of the conclusions already reached and in the interest of brevity, we abstain from a discussion of the 8th, 9th and 10th propositions relied upon by appellant as grounds for reversal.

A so-called ''statement of the case and opinion,'' after setting forth the pleadings in full, names of the attorneys who appeared at the trial, and the fact that evidence was adduced by both parties, proceeds as follows:

''As a result of the evidence, as a whole, introduced by both parties, and after considering the law and doctrine applicable to the case, the court is of the opinion that the law and the facts in this case are in favor of the plaintiff and against the defendant, and that it should therefore render judgment, as it hereby does, sustaining

148

the complaint in all its parts, and directing the defendant, the Phoenix Fire Insurance Company, to pay plaintiff, Isaac Aboaf, substituted by his judicial administrators Irwin Allan Leher and Samuel Isaacs, the amount claimed of $11,000.00 plus interest on said sum from the time of the filing of the complaint until full discharge has been made, as well as the costs of this suit. Let this judgment be entered in the book used for that purpose in this court and let the necessary order to comply with said judgment duly issue.''

In the absence of anything more definite in the way of findings or more illuminating in the way of reasoning, we are somewhat at a loss to account for the judgment rendered below and, as we have shown, the brief for appellee throws but little light upon what might have been in the mind of the district judge.

Some months before the fire assured was notified that if he continued to occupy the building it would be as a tenant at will. In the circumstances and in order to obtain a reduction in rental he pointed out at that time that he was liquidating an old stock of which but little remained on hand. Shortly thereafter, upon receiving notice to quit and upon learning that certain competitors in business would occupy the building when vacated, Aboaf stated that he would never surrender possession while alive and that the prospective new tenants would never occupy the premises.

The evidence as a whole points conclusively to a fire of incendiary origin as well as to deliberate fraud and misrepresentation in the negotiations which followed.

Whether or not the so-called books might have been regarded as a substantial compliance with the terms of the policy, had there been no ground for suspicion, is another matter that need not be determined at this time.

The judgment appealed from must be reversed and another judgment rendered, dismissing the complaint with costs against the plaintiff.