## GERMAN INSURANCE COMPANY OF FREEPORT, ILLINOIS, v. CALEB DAVIS.

FILED JUNE 5, 1894.    No. 5554.

1. **Action on Fire Insurance Policy: LIMITATION.** Under a policy of insurance providing that no action thereon can be maintained unless commenced within six months after the fire, and that the damages should be payable sixty days after satisfactory proofs of loss shall have been received by the company, an action upon the policy is not barred if commenced within six months from the expiration of the sixty days. (*German Ins. Co. v. Fairbank*, 32 Neb., 750; *Fireman's Fund Ins. Co. v. Buckstaff*, 38 Neb., 150.)

2. **Insurance: PREMISES UNOCCUPIED.** Where the premises were occupied by tenants of insured at the time the risk was written, and the policy so specified, a stipulation in the policy making it void in case the premises became vacant and unoccupied without the consent of the company is not violated, so far as to defeat the recovery for the loss, by the fact that the evening before the fire, without the knowledge or consent of the insured, such tenants moved out of the building. (*Liverpool & London & Globe Ins. Co. v. Buckstaff*, 38 Neb., 146.)

3. ———: **PROOFS OF LOSS: NOTICE.** A provision in a policy of insurance that the insured in a case of loss should forthwith give notice thereof in writing to the company, and within sixty days from date of the fire furnish preliminary proofs of his loss, is valid and binding upon the insured, and in an action upon the policy it is necessary for the plaintiff to prove that such notice and proofs of loss were furnished, or that the company waived the same.

4. ———: ———: **WAIVER.** A letter by the secretary of a fire insurance company, written after the proofs of loss were due under the policy, acknowledging the receipt of a letter written by the policy holder regarding his claim for loss, and also stating that the matter therein referred to was in the hands of the company's state agent, who would give it his attention as early as possible, and admonishing the insured to be patient, does not waive the conditions requiring the insured to furnish proofs of loss within a specified time.

5. ———: ———: ———: **ADJUSTER'S AUTHORITY: EVIDENCE.** Where the acts of an adjuster are relied upon to establish a

German Ins. Co. v. Davis.

waiver of proofs of loss, or of deficiencies therein, it must be shown that such person was clothed with power to represent the company in adjusting the loss.

6. **Instructions** should be based upon the evidence in the case.

ERROR from the district court of Colfax county. Tried below before MARSHALL, J.

The opinion contains a statement of the case.

*Higgins & Garlow*, for plaintiff in error:

The company is not liable, because the building was unoccupied at the time of the fire. (*White v. Phœnix Ins. Co.*, 20 Ins. L. J. [Me.], 900; *Burlington Ins. Co. v. Gibbons*, 19 Ins. L. J. [Kan.], 546; *Lancy v. Home Ins. Co.*, 19 Ins. L. J. [Me.], 878; *Continental Ins. Co. v. Kyle*, 19 Ins. L. J. [Ind.], 720; *Fehse v. Council Bluffs Ins. Co.*, 18 Ins. L. J. [Ia.], 319.)

Notice and proof of loss must be given as required by the terms of the contract. (2 Wood, Fire Insurance, secs. 436, 437; *Central City Ins. Co. v. Oates*, 18 Ins. L. J. [Ala.], 764; *McCann v. Ætna Ins. Co.*, 3 Neb., 198; *Trask v. State Fire & Marine Ins. Co.*, 72 Am. Dec. [Pa.], 622; *Weidert v. State Ins. Co.*, 19 Ins. L. J. [Ore.], 740.)

Proof of loss was not waived. (*Kelly v. Sun Fire Office*, 20 Ins. L. J. [Pa.], 407; *Patrick v. Farmers' Ins. Co.*, 80 Am. Dec. [N. H.], 197; *German Ins. Co. v. Fairbank*, 32 Neb., 750; *Central City Ins. Co. v. Oates*, 18 Ins. L. J. [Ala.], 764; *Knudson v. Hekla Fire Ins. Co.*, 43 N. W. Rep. [Wis.], 954; *Girard Fire & Marine Ins. Co. v. Hebard*, 95 Pa. St., 45; *Gould v. Dwelling House Ins. Co.*, 21 Ins. L. J. [Mich.], 328.)

The suit was not commenced in time. (*Patrick v. Farmers' Ins. Co.*, 80 Am. Dec. [N. H.], 197; *Muse v. London Assurance Corporation*, 20 Ins. L. J. [N. Car.], 515; *Ripley v. Ætna Ins. Co.*, 86 Am. Dec. [N. Y.], 362; *Fullam v. New York Union Ins. Co.*, 66 Am. Dec. [Mass.], 462; *Keim*

*v. Home Mutual Fire & Marine Ins. Co. of St. Louis,* 97 Am. Dec. [Mo.], 291; *Travellers Ins. Co. v. California Ins. Co.,* 45 N. W. Rep. [N. Dak.], 703; *Merchants Mutual Ins. Co. v. Lacroix,* 14 Am. Rep. [Tex.], 370.)

Courts will not give to plaintiff by construction what he failed to secure by agreement. (*Chambers v. Atlas Ins. Co.,* 19 Ins. L. J. [Conn.], 181; *Howard Ins. Co. v. Hocking,* 19 Ins. L. J. [Pa.], 280; *Johnson v. Humboldt Ins. Co.,* 91 Ill., 92; *Garido v. American Central Ins. Co. of St. Louis,* 8 Pac. Rep. [Cal.], 512; *Virginia Fire & Marine Ins. Co. v. Wells,* 3 S. E. Rep. [Va.], 349; *Riddlesbarger v. Hartford Ins. Co.,* 7 Wall. [U. S.], 386.)

*Grimison & Thomas, contra:*

The notice of loss was sufficient. (*Continental Ins. Co. of New York v. Lippold,* 3 Neb., 391; *Insurance Co. of North America v. McLimans,* 28 Neb., 653; Wood, Fire Insurance, sec. 430.)

There was sufficient proof of loss. (*Vangindertaelen v. Phœnix Ins. Co. of Brooklyn,* 51 N. W. Rep. [Wis.], 1122; *Billings v. German Ins. Co. of Freeport,* 34 Neb., 502; *Searle v. Dwelling-House Ins. Co.,* 25 N. E. Rep. [Mass.], 290; *Gristock v. Royal Ins. Co.,* 47 N. W. Rep. [Mich.], 549; *German-American Ins. Co. v. Etherton,* 25 Neb., 505; *Phenix Ins. Co. of Brooklyn v. Munger,* 30 Pac. Rep. [Kan.], 120.)

Defects in proofs of loss were waived. (*Union Ins. Co. v. Barwick,* 36 Neb., 223; *Vergeront v. German Ins. Co. of Freeport,* 56 N. W. Rep. [Wis.], 1096; *St. Paul Fire & Marine Ins. Co. v. Gotthelf,* 35 Neb., 351; *Billings v. German Ins. Co.,* 34 Neb., 502.)

The action was not barred. (*Barnes v. McMurtry,* 29 Neb., 178; *German Ins. Co. v. Fairbank,* 32 Neb., 751.)

The building was not vacant within the meaning of the policy. (*German Ins. Co. v. Penrod,* 35 Neb., 273; *Liverpool & London & Globe Ins. Co. v. Buckstaff,* 38 Neb., 146.)

NORVAL, C. J.

This action was brought by Caleb Davis against the German Insurance Company of Freeport, Illinois, upon a fire insurance policy of $725, covering plaintiff's one-story frame, shingle roof, building, and three billiard tables therein, said building being situate in the village of Avoca, Cass county, and occupied by tenants as a saloon and billiard hall. The policy was issued January 23, 1889, for the period of one year. The insured property was totally destroyed by fire April 26, 1889. The amended petition contains the usual allegations in such an action. The answer, after admitting certain averments of the petition and denying others, alleges four substantive defenses, namely:

1. The plaintiff willfully, unlawfully, and fraudulently caused to be set the fire which destroyed the building and contents, for the purpose of obtaining from the defendant the insurance money.

2. That the action is barred by the limitation clause in the policy.

3. That the policy was not in force at the time of the fire, by reason of the building being vacant and unoccupied.

4. That the plaintiff failed and neglected to furnish notice and proofs of said fire and loss within the time required by the contract.

To the answer the plaintiff replied by a general denial, also setting up that the defendant had waived the stipulation in the policy as to the notice and proofs of loss. The trial resulted in a verdict and judgment for the plaintiff in the sum of $808.80, and from an order denying a new trial defendant prosecutes error.

It is quite probable that the building was set on fire by an incendiary, but there is absolutely no proof in the record which in the least degree tends to connect the plaintiff therewith, while the uncontradicted evidence shows that neither the plaintiff nor his son had anything to do with

the burning of the building.    It is not insisted in the brief of the company that they had.    The first defense need not therefore be considered further.

By the policy it is provided that the damages are "to be paid in sixty days after the loss shall have been ascertained, in accordance with the conditions of the policy, and satisfactory proof of the same shall have been made by the insured, and received at the principal office of the company in Freeport, Illinois, unless the property be replaced or this company shall have given notice of its intention to rebuild, or repair the damaged premises." The policy also contains this clause:

"XXV. No suit or action of any kind against this company for recovery of any claim upon, under, or by virtue of this policy shall be sustainable in any court of law or chancery unless such suit or action shall be commenced within the term of six months next after the fire; and in case any suit or action be commenced against this company after the term of six months next after the fire, the lapse of time shall be taken and deemed as conclusive evidence against the validity of such claim thereby so attempted to be enforced, any statute of limitation to the contrary notwithstanding.    Also, that this policy is made and accepted upon the above expressed terms and conditions."

On the night of the 26th of April, 1889, the fire occurred.    The record is absolutely silent as to the time· the suit was commenced.    The transcript shows that an amended petition was filed in the court below on the 17th day of April, 1890.    The original petition is not in the record before us, nor is there anything to indicate the date of the filing thereof, or when the summons was issued. The answer avers that the suit was not brought until the 16th day of December, 1889, but this averment was denied by the reply.    In view of this condition of the record we might presume that the action was instituted within six months from the occurrence of the fire, but since the plaint-

iff in error in its statement of the case in the brief says that the petition was filed December 16, 1889, and service soon thereafter was made on the company, and as the defendant in error in his brief does not deny the correctness thereof, we will accept as a fact that the action was commenced on said date, or more than seven months subsequent to the fire. Counsel for the insurance company insist, and they have cited many authorities from other states to sustain their position, that, under the provisions of the policy, the action was barred in six months after the fire, while counsel for the insured contends that the six months limitation period did not commence to run until the right of action fully accrued. Special limitations in contracts similar to the provisions in this policy are now generally sustained by the courts, although it must be conceded that the decisions are not in harmony as to the time the period of limitation begins to run. Some hold that it dates from the fire or loss, and others from the time the insured had the right to bring suit upon the policy. This court, by its former decisions, is committed to the doctrine last stated.

In *German Ins. Co. v. Fairbank*, 32 Neb., 750, by the terms of the policy it was stipulated that the damages should be paid in ninety days after notice and proofs of loss are received by the company. The policy contained the following clause: "It is mutually agreed that no suit or action against this company upon this policy shall be sustained in any court of law or equity unless commenced within six months after the loss or damage shall occur; and if any suit or action shall be commenced after the expiration of six months, the lapse of time shall be taken and deemed as conclusive evidence against the validity of such claim, any statute of limitations to the contrary notwithstanding." The suit was not brought upon the policy until eight and a half months after the loss, and it was held that the cause of action did not accrue before the expira-

tion of ninety days after proofs of loss were received, and
that the action was not barred until the expiration of six
months from that time. The opinion cites the following
authorities, which sustain the construction there given:
*Ellis v. Council Bluffs Ins. Co.,* 64 Ia., 507; *Miller v.
Hartford Fire Ins. Co.,* 70 Ia., 704; *McConnell v. Iowa
Mutual Aid Association,* 79 Ia., 757; *Matt v. Iowa Mutual
Aid Association,* 46 N. W. Rep. [Ia.], 857; *Hay v. Star
Fire Ins Co.,* 77 N. Y., 241; *Killips v. Putnam Fire Ins.
Co.,* 28 Wis., 472. The conditions in the policy in the
case of *German Ins. Co. v. Fairbank, supra,* are almost
identical with those contained in the policy before us, the
only difference being that in the precedent cited the language
used in the limitation clause is "unless commenced within
six months after the loss or damage shall occur," while by
this policy the action must be brought "within the term of
six months next after the fire." There is no substantial
difference between the two provisions. The date of the
"fire" and the date of the "loss" are the same.

In *Fireman's Fund Ins. Co. v. Buckstaff,* 38 Neb., 150,
this court had under consideration a policy, which, in addi-
tion to the usual provision that loss should not become pay-
able until sixty days after the proofs of loss are received by
the company, contained a condition that "no suit or action
against this company for the recovery of any claim by vir-
tue of this policy shall be sustained in any court of law or
chancery * * * unless such suit or action shall be
commenced within six months after the occurrence of the
fire by reason of which the claim for loss or damage is
made; and should any suit or action be commenced against
this company after the expiration of the aforesaid six
months, lapse of time shall be taken and deemed as con-
clusive evidence against the validity of such claim, any
statute of limitations to the contrary notwithstanding." It
was held that suit upon the policy could be brought within
six months from the expiration of sixty days next after

proofs of loss are received by the company, and that an
action brought within that time is not barred.

These decisions of our court are decisive of the case at
bar upon the question of limitation, and following them
we hold that the limitation does not run from the date of
the fire, but from the time the cause of the action accrued.
(See *Friezen v. Allemania Fire Ins. Co.*, 30 Fed. Rep., 352;
*Hong Sling v. Royal Ins. Co.*, 30 Pac. Rep. [Utah], 307;
*Case v. Sun Ins. Co.*, 23 Pac. Rep. [Cal.], 534.)

Plaintiff in error contends the insured has violated the
following provision of his policy:

"XV. This policy should not cover unoccupied build-
ings; and if the premises shall be vacated without the con-
sent of this company indorsed hereon,  *  *  *  this
policy shall cease and determine."

When the insurance was written the building was occu-
pied by Davis and Peters as tenants of the insured, and
the policy recited that the premises were occupied by them
as a billiard hall and saloon. About 6 o'clock of the
evening of April 26, 1889, the tenants moved out of the
building their stock of liquors and cigars, but left in the
building the billiard tables. The fire occurred some time
during the night after the removal. The insured, when
the policy was issued, as well as at the time of the fire,
lived at Schuyler and had no notice that the tenants in-
tended to or had moved, nor had there been returned to
him the key of the building. It does not appear that the
lease had even expired. Plaintiff in error argues that
under the facts detailed above the building was "vacant
and unoccupied," within the meaning of that term as used
in the policy, and further, that the trial court erred in its
instruction upon this point, which instruction is in the fol-
lowing language:

"12. The jury are instructed that the policy of insur-
ance in this case provides that 'this policy shall not cover
unoccupied buildings, and if the premises insured shall be

vacated without the consent of this company indorsed thereon,   *   *   *   this policy shall cease and determine,' and if the jury from the evidence believe that at the time of the fire the premises were unoccupied without the consent of the defendant, then this policy had ceased and the jury should find for the defendant.   The word 'unoccupied' in the policy is to be construed in its ordinary and popular sense, and applied to a saloon building it means such want of occupancy as usually or ordinarily attends, or is exercised over, a saloon building while being operated as a saloon; however, if in the evidence the jury believed that the saloon building in question had been vacated late in the evening of the day preceding the fire, and that the plaintiff was then at the city of Schuyler, and so far away, from said building that the time intervening between the hour of vacation and the hour of the fire was not reasonably sufficient to permit the plaintiff to reoccupy it, after the vacation and before the fire, then said saloon could not be considered to be vacated within the terms of the policy."

Plaintiff in error relies upon, and cites in its brief, many cases to show that the premises had become vacant and unoccupied, and they fully sustain its contention.   Upon this question the authorities are again conflicting and an attempt to harmonize them would be unsuccessful.   The words "vacant and unoccupied," when used in a policy of insurance, should be construed in view of the uses and purposes for which the building is adapted, which must have been within the contemplation of the parties when the contract was entered into, also whether the parties contemplated that the premises were to be occupied by the assured or by a tenant.   The meaning of the words "vacant and unoccupied," when used in a policy upon a dwelling, is not the same as when used in a contract of insurance on a store building, livery stable, or a school house.   It will hardly be contended that a policy on a school building is not in

force during the summer vacation of the schools, although there is no person in the building during that period. The use to which the building is adapted and devoted has much to do in determining whether it is vacant or unoccupied. Each case must be determined upon its own peculiar facts. If the premises were to be used by a tenant, as in the case at bar, a mere temporary vacancy during a change of tenants ought not to be held to avoid the insurance.

In *Liverpool & London & Globe Ins. Co. v. Buckstaff*, 38 Neb., 146, the policy contained a clause in regard to a vacancy and unoccupancy of the building substantially like the one in this suit. There the policy was upon a hotel, which, at the time the risk was written, was occupied by a tenant, and was to remain so occupied. The hotel was closed to the public on October 20, the tenant moved out on the following day, leaving a small portion of the furniture and some other personal property. On the night of October 21 the building burned. The insured had not taken possession of the building, nor had he received from the tenant the keys therefor. The court, in construing the provision of the policy, in the opinion say: "Some of the authorities hold that the vacation of a building during the time necessary for the changing of tenants of the assured will be fatal under the ordinary terms and conditions in a fire insurance policy. But we are unwilling to go that far. It seems to the writer that such a temporary vacancy was a contingency contemplated by the parties, and against which the provision was not intended to apply. Many recent authorities so hold. In *Hotchkiss v. Phœnix Ins. Co.*, 76 Wis., 269, Lyon, J., in construing the term 'vacant or unoccupied' in an insurance policy, observes: 'Under certain circumstances premises may be vacant or unoccupied, when under other circumstances premises in like situation may not be so, within the meaning of that term in insurance policies. Thus, if one insures his dwelling house, described in the policy as occupied by himself as

his residence, and moves out of it, leaving no person in the occupation thereof, it thereby becomes vacant or unoccupied; but if he insures it as a tenement house, or as occupied by a tenant, it may fairly be presumed, nothing appearing to the contrary, that the parties to the contract of insurance contemplated that the tenant was liable to leave the premises, and that more or less time might elapse before the owner could procure another tenant to occupy them, and hence that the parties did not understand that the house should be considered vacant, and policy forfeited or suspended, according to its terms, immediately upon the tenants leaving it. This distinction was made in some of the cases, in *Lockwood v. Middesex Mutual Assurance Co.* 47 Conn., 561; *Whitney v. Black River Ins. Co.*, 9 Hun [N. Y.], 39; 1 Wood, Insurance, sec. 91, pp. 208–210, and cases cited.' The following sustained the above doctrine: *Traders Ins. Co. v. Race*, 29 N. E. Rep. [Ill.], 846; *Home Ins. Co. v. Wood*, 47 Kan., 521; *Roe v. Dwelling House Ins. Co.*, 23 Atl. Rep. [Pa.], 718; *American Central Ins. Co. v. Clarey*, 28 Ill. App., 195; *City Planing & Shingle Mill Co. v. Merchants, Manufacturers & Citizens Mutual Ins. Co.*, 40 N. W. Rep. [Mich.], 777. We are satisfied that the trial court was justified in finding that the premises were not ' vacant and unoccupied,' within the meaning of that term in the policy."

Although we have considered the question anew, and examined the cases cited by plaintiff in error, we are satisfied that the doctrine announced in the case just quoted from is sound and should be adhered to. The instruction on this feature of the case, already quoted, is based upon the facts as disclosed in the evidence, and announces a correct proposition of law. The jury was justified in finding from the evidence that the premises were not vacant and unoccupied within the meaning of the policy.

The clause of the policy on which the defense is chiefly based is the thirteenth, which provides: "The insured

sustaining loss or damage by fire under this policy shall forthwith give notice thereof in writing to this company, and within sixty days from the date of such fire shall deliver as particular an account of his loss and damage as the nature of the case will admit, signed with his own hand, and shall accompany the same with his oath or affirmation declaring the said account to be true and just, * * * the building was occupied at the time of the loss and who were the occupants of such building, and when and how the fire originated, with all the details thereof, so far as he is informed, knows, or believes. * * The insured shall furnish full plans and detailed specifications of the building, * * * which plans and specifications of the property damaged or destroyed as is practicable to be made. * * * Proofs of loss must be completed and forwarded to the company within sixty days after date of fire, and must bear the certificate of a magistrate, notary public, or clerk of a court of record nearest the place of loss and not concerned in the loss as a creditor or otherwise, nor related to the assured, stating that he has examined into the circumstances attending the loss, knows the character and circumstances of the assured, and verily believes that the assured has, without fraud or evil practice, sustained loss on the property insured to the amount which such magistrate, notary public, or clerk shall certify to. Failure to comply with these terms and conditions within the time prescribed shall cause forfeiture of all claims under this policy." The courts have almost uniformly sustained stipulations in contracts of insurance similar to the above. It is also firmly settled by the adjudications in this state that such conditions are inserted in the policy for the benefit of the underwriter, but that compliance therewith by the insured may be waived by the company. (*German Ins. Co. v. Fairbank*, 32 Neb., 750; *Billings v. German Ins. Co.*, 34 Neb., 502; *St. Paul Fire & Marine Ins. Co. v. Gotthelf*, 35 Neb., 351; *German-*

*American Ins. Co. v. Barwick,* 36 Neb., 223; *Western Home Ins. Co. v. Richardson,* 40 Neb., 1.)

In the case under review the plaintiff, before he was entitled to recover, was required to establish by competent evidence either that notice and proofs of loss were furnished the company within the time stated in, and according to the requirements of, the policy, or that the defendant waived the same. The contention of the learned counsel of the company is that the testimony in the case fails to show the insured gave the notice and furnished the proofs of loss according to the stipulations of the policy, or that the company waived the same.

Mr. Davis testified that the next day after the fire, or the next day but one, he wrote a letter to the company at Freeport, Illinois, also to James R. Wash, at Lincoln, the general agent for this state, notifying each of the loss; that the letters, after being enclosed in envelopes properly addressed, and postage prepaid, were deposited in the post-office at Avoca, and the same were never returned to him; that on the 17th day of June, 1889, the plaintiff below, accompanied by one John Marquette, went before Mr. Hinners, a justice of the peace living at Avoca, and procured the latter to make out the proofs of loss, which, on being completed, were subscribed and sworn to by Davis before the justice, and were mailed to the company on the same day; that Davis wrote the company regarding his loss on July 3, 1886, to which he received the following reply:

"FREEPORT, ILLINOIS, July 6, 1889.

"*Caleb Davis, Esq., Schuyler, Neb.*—DEAR SIR: In reply to yours 3d inst, would say that the matter therein referred to is in the hands of our state agent, Mr. J. R. Wash, of Lincoln, Nebraska, who will give it his attention as early as possible. Have a little patience, as these matters cannot well be reached at one time, they being quite numerous at this season of the year.

"Yours truly, WM. TREMBOR."

Mr. Davis further testified that after receiving the above letter he called upon the state agent, Mr. Wash, at Lincoln, and held a conversation with him about the matter, but received no definite answer about what the company proposed to do; that on the 14th day of September, 1889, Davis made out before Justice Hinners an additional or supplemental proof of loss, which was duly sworn to, and on that day mailed to, and was subsequently received by, the company; that insured has never received from the company, or any one purporting to act for it, any notice, or intimation, that the proofs of loss furnished by him were insufficient or defective, nor were they ever returned to him.

Wm. Trembor, the secretary of the company, in his testimony admits receiving, the day after the fire, a telegram from Mr. Conley, the local agent of the defendant at Avoca, notifying him that the building described in the policy had been burned; but states that the company never received any notice from Mr. Davis, or any one representing him, bearing date of April 27, 1889; that he did not receive the notice and proof of loss dated June 17, 1889, but did receive the affidavit or proof made in September of that year, which was referred to Mr. Wash of Lincoln, who was in charge of the company's business in Nebraska at that time; that had witness not received the telegram from Conley, the company would not have known that the property had been destroyed until many months after the loss.

Mr. Wash testified, in effect, that he never received any letter or notice of loss dated about the 28th or 29th of April, 1889, purporting to come from Mr. Davis, or any one acting for him, with reference to the loss in question.

The foregoing is a brief synopsis of the testimony relating to notice and proofs of loss. On the one side is the positive testimony of Mr. Davis that notices of loss were mailed both to the company and its state agent soon after

the fire, and on the other there is the testimony, equally as positive, of the secretary of the defendant, Mr. Trembor, and of the state agent, Mr. Wash, that such notices were never received by them. The policy required the insured, in case of loss, to forthwith give notice thereof in writing to the company. Such notice may be sent through the mails, and when transmitted in that manner, if received by the company, the requirements of the policy would be complied with. We think the plaintiff's testimony, in connection with the letter of July 6, sufficient to warrant the jury to base a finding that the notice of loss sent by Mr. Davis to the company was received, and yet the testimony on the part of the defendant would have been sufficient to sustain a finding the other way on that question. In regard to the preliminary proofs of loss it will be observed that the policy requires that they be "forwarded to the company within sixty days after the date of the fire." If the evidence of Mr. Davis is to be credited, preliminary proofs of loss were transmitted to the company by mail on the 17th day of June, 1889, which was within the period named in the policy. The evidence as to the receipt of the same is quite as unsatisfactory as that relating to the receipt of notice of the loss. In fact the making and sending to the company of the proofs of the loss in September, without any explanation in the testimony why second proofs were sent, tends strongly to strengthen the theory of the defense that no other proofs were ever furnished by the plaintiff. As to the alleged proofs of the date of June 17, the evidence falls far short of showing that the same complied with the stipulations of the policy. The only testimony upon the subject was given by Mr. Davis, and he says, when asked to give the contents of the writing, that it stated "the building was burned, the size of the building and the value of the building, the billiard table, two billiard tables, one pigeon-hole table, with all its contents; the valuation was $825, I think, if my memory

serves me right." If the proofs contain nothing more, they did not meet the requirements of the policy, as a reference to the contract will readily disclose. But it is said the company waived any defect or informality in the proofs by the acts of its secretary and its state agent. All the secretary did was to write the letter of July 6. Waiver could not be inferred from that alone. It was not sent until after the expiration of sixty days in which the preliminary proofs of loss should have been made. Neither did Mr. Wash recognize the validity of the claim for damages when Mr. Davis went to see him about it. In fact the testimony is very meager as to what transpired between Mr. Davis and Mr. Wash at that time. It appears that one Westover was present and heard the conversation, but he was not called at the trial as a witness. It was attempted to be shown that in May, 1889, one Roundtree came to Avoca to adjust the loss, but it does not appear that he had any authority from the company to act, while on the other hand there is proof tending to show that he was not authorized to adjust the loss. If he was clothed with power to represent the company, then perhaps what he did might be held to be a waiver of any deficiencies in the preliminary proofs of loss.

Complaint is made of the giving of the eighth instruction, which is as follows: " The jury are instructed that if from the evidence they believe that the fire occurred on or about the 26th day of April, 1889, and that on or about the 27th day of April, 1889, the plaintiff gave the defendant notice and proof of loss, and that again on the 17th day of June, 1889, the plaintiff again in writing gave defendant notice in writing and proof of loss in writing, and if the jury from the evidence believe that these notices and proofs or accounts were not in exact conformity with the terms of the policy and these notices and account or proof of loss were accepted or retained by the defendant without objection, or without suggestion that they did not conform

to the terms of the policy and did not object to them for that reason, then the defendant is estopped from claiming that said notices and accounts of loss were not given in the time and manner required by the terms of the policy." In two important particulars this instruction was not based upon the evidence. There was no testimony that the plaintiff gave the company in April "proof of loss." Plaintiff claims to have sent in that month a notice of the loss merely. Again, the instruction assumed there was evidence before the jury from which they might find that two notices and proof of the loss were accepted and retained by the company, one in April and the other in June, while, as already stated, no proofs of loss were ever forwarded in April, so far as the record before us discloses. For the reasons stated the judgment must be reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.