Isaac ABOAF, demandante y apelado, *v.* THE PHOENIX FIRE INSURANCE COMPANY, demandada y apelante.

No. 3468.—*Visto:* Abril 23, 1925. *Resuelto:* Marzo 5, 1926.

1. SEGUROS—ACCIONES FUNDADAS EN PÓLIZAS—TÉRMINO PARA DEMANDAR LIMITADO POR ESTIPULACIÓN EXPRESA EN LA PÓLIZA—TÉRMINO DENTRO DEL CUAL DEBE ESTABLECERSE LA ACCIÓN—SEGUNDA ACCIÓN EJERCITADA FUERA DEL TÉRMINO.—Disponiéndose en póliza de incendio que la compañía queda relevada de responsabilidad al vencimiento de un período especificado "a menos que esté en tramitación un arbitraje o acción judicial," si establecida acción dentro del término se desestima antes del mismo vencer y se establece acción posterior después de vencido aquél, la acción así ejercitada, a menos que la omisión de presentarla en tiempo se debiera a la conducta de la compañía, ha prescrito.

2. SENTENCIA— CASOS CONTENCIOSOS — SENTENCIA SOBRE LOS MÉRITOS — ACCIÓN PRESCRITA.—Si de la evidencia presentada más que de la demanda misma, aparece claro que la acción está prescrita, no debe dictarse sentencia a favor del demandante sobre los méritos.

3. SEGUROS—AVISO Y RECLAMACIÓN DE PÉRDIDAS—DE LAS DECLARACIONES Y PRUEBAS DE PÉRDIDAS—EFECTO EN CUANTO AL VALOR DE LA PROPIEDAD DESTRUIDA—VALORACIÓN EXCESIVA, EN LAS PRUEBAS.—Dentro de una cláusula, en póliza de incendio, al efecto de que la existencia de fraude en la reclamación de daños o declaraciones falsas en su apoyo anula el derecho a recobrar, una fraudulenta valoración excesiva en la reclamación anula el cobro bajo la póliza.

4. SEGUROS—AVISO Y RECLAMACIÓN DE PÉRDIDAS—DE LAS DECLARACIONES Y PRUEBAS DE PÉRDIDAS—EFECTO DE FRAUDE O FALSO JURAMENTO EN LAS MISMAS—FRAUDE O FALSO JURAMENTO DE UN AGENTE DEL ASEGURADO.—El fraude o falso juramento por parte de un agente a quien el asegurado ha delegado el deber de presentar pruebas de pérdidas, anula el cobro.

5. SEGUROS—RIESGOS Y CAUSAS DE PÉRDIDAS—SEGUROS SOBRE PROPIEDADES Y TÍ-
   TULOS—PÉRDIDA OCASIONADA POR EXPLOSIÓN.—Excluídas de un seguro de
   incendio ''las pérdidas o daños causados por cualquier explosión,'' si la
   compañía es o no responsable por la pérdida ocasionada por fuego originado
   por una explosión de gasolina, *quaere.*
6. SEGUROS—ACCIONES FUNDADAS EN PÓLIZAS—DERECHO A COBRAR—CONTRAVEN-
   CIÓN A LAS ESTIPULACIONES DE LA PÓLIZA.—Cuando la prueba en conjunto
   indica concluyentemente que, en contravención a las estipulaciones de una
   póliza, tuvo lugar un fuego o incendio intencional así como un fraude deli-
   berado y falsa representación en las negociaciones subsiguientes, el asegu-
   rado no puede cobrar bajo la póliza.

SENTENCIA de *Rafael Díaz Cintrón,* J. (Ponce), declarando con lugar
demanda sobre cobro de póliza, con costas. *Revocada y dictada
otra declarando sin lugar la demanda, con costas.*

*Felipe Colón* y *Jaime Sifre,* abogados de la apelante; *José Tous Soto*
y *R. Pérez Marchand,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del
tribunal.

La demandada-apelante alega haberse cometido por la
corte inferior los siguientes errores:

''I. El tribunal sentenciador erró al desestimar la excepción pre-
via interpuesta a la demanda alegando que la causa de acción había
prescrito.

''II. El tribunal sentenciador erró al dictar sentencia sobre los
méritos a favor del demandante, toda vez que la causa de acción ha-
bía prescrito.

''III. El tribunal sentenciador erró al admitir como prueba de
la capacidad de Irwin Allen Lehr y Samuel Isaacs, administradores,
la certificación expedida por el Secretario del *Surrogates Court.*
Transcripción página 3.

''IV. El tribunal sentenciador erró al no declarar que el deman-
dante había cometido una infracción del artículo 8 del contrato de
seguro y que por tal motivo éste no obligaba a la demandada.

''V. El tribunal sentenciador erró al no declarar que el deman-
dante había cometido una infracción del artículo 13 del contrato de
seguro y que por tal motivo éste no obligaba a la demandada.

''VI. El tribunal sentenciador erró al apreciar que en el estable-
cimiento del demandante había, en la fecha del incendio existencias
y mobiliario con un valor de Once Mil Dollars ($11,000) y al dictar
sentencia, como dictó, por dicha cantidad.

''VII. El tribunal sentenciador erró al no declarar que el sinies-

tro y los daños causados por el mismo fueron debidos a una explo-
sión no ocasionada por el gas de hulla.

"VIII. El tribunal sentenciador erró al no declarar que el de-
mandante había cometido una infracción de la condición que se en-
cuentra en el contrato de seguro sobre libros e inventarios en caja
de seguridad.

"IX. El tribunal sentenciador erró al admitir como prueba el li-
bro mayor (exhibit P) y el diario (exhibit N.)

"X. El tribunal sentenciador erró al dictar sentencia a favor
del demandante por el importe de la póliza sin tener en cuenta para
nada las existencias que fueron salvadas."

[1] La cláusula 19 de la póliza en la cual se fundó esta
acción es como sigue:

"Cumplido el plazo de un año después de la fecha del siniestro,
la Compañía quedará libre de la obligación de pagar las pérdidas y
daños ocasionados por el mismo a menos que esté en tramitación un
arbitraje o una acción judicial relacionada con la reclamación."

El fuego ocurrió en 27 de mayo de 1922. En febrero 21,
1923, el demandante radicó su demanda en la Corte Federal.
En mayo 5, 1923, el Juez de la Corte de Distrito de los Es-
tados Unidos, resolvió una cuestión jurisdiccional y la ac-
ción así establecida en la siguiente forma:

"En este caso fué radicada una excepción previa por los abo-
gados de los demandados, fundada en dos razones: primera:—que
esta corte carece de jurisdicción por cuanto se alega en la demanda
que el demandante es un ciudadano de la república de Francia do-
miciliado fuera de la Isla de Puerto Rico, y que la demandada es
es una sociedad mercantil por acciones organizada bajo las leyes del
Estado de Connecticut; segunda: que por ser la demandada una
sociedad mercantil por acciones, la cuestión de la jurisdicción fede-
ral depende de la ciudadanía de los miembros de tal compañía por
acciones, y que dicha compañía no puede ser demandada en una corte
federal .en su nombre colectivo. Para sostener la excepción previa
ha sido sometido un alegato por los abogados de la demandada y al
ser llamado el abogado del demandante para presentar su razona-
miento en oposición a la excepción previa, alegó a la corte que no
deseaba argumentar la excepción previa y que quería que la pre-
sente acción fuera desestimada sin perjuicio de su derecho a seguir
una acción a nombre de su cliente contra esta misma demanda en la

debida corte insular de Puerto Rico, y por tanto, resuelve que toda vez que la demandada niega la jurisdicción de esta corte y por cuanto el demandante quiere que este caso sea desestimado sin perjuicio, así se ordena.''

En julio 26, 1923, o sea 14 meses después del incendio, y más de dos meses con posterioridad a la desestimación de la primera acción, el demandante radicó este pleito en la corte de distrito insular.

''Las partes pueden mediante estipulación expresa, limitar el tiempo dentro del cual la acción debe ser establecida, y tal disposición es válida y obligatoria aunque el término sea menor que el fijado por el estatuto de prescripción.   Cuando la póliza contiene una estipulación como ésta, la acción debe ser establecida dentro del término fijado, y de no ser así seguida, la disposición es un completo impedimento (*bar*) a la acción a falta de una renuncia de la cláusula.''   5 *Joyce on Insurance,* página 5346.

''La acción aludida, la cual debe ser iniciada dentro de los doce meses, es la que se sigue hasta la sentencia.   La falta de una acción anterior por cualquier causa no puede variar el caso.   El contrato declara que no se seguirá una acción a menos que tal acción, no alguna anterior, sea establecida dentro del período fijado.   Nada dispone sobre una excepción en el caso de que no se haya comenzado una acción, y la corte no puede incluir una sin cambiar el contrato.''   *Riddlesbarger* v. *Hartford Insurance Co.* 74 U. S. 386 (19 L. Ed. 257).

El texto de la cláusula 19, *supra,* es aún más específico. Lee como si hubiera sido redactado expresamente para anticipar precisamente la cuestión que se ha originado en el presente caso, y no dejar lugar a interpretación, o mal entendimiento.   Releva a la compañía de toda responsabilidad al vencimiento del período especificado ''a menos que esté en tramitación un arbitraje o una acción judicial.''

''La regla general es que aun cuando se establezca una acción oportunamente, no puede, sin embargo, ser iniciada una segunda acción después de hacerse completo un impedimento (*bar*) por contrato, aunque la primera acción haya terminado ʼpor *desestimación,* o sobreseimiento (*nonsuit*), de modo que no se ha celebrado ningún juicio sobre los méritos del caso.   Las *excepciones estatutorias* que

permiten las segundas acciones con arreglo al estatuto de prescripción generalmente no son de aplicación para reservar el derecho a
establecer una segunda acción después del término·del contrato, por
falta de la primera acción, aunque se ha resuelto lo contrario.''   26
C. J. 479, 480.

''El peso de las autoridades sostiene, al parecer, la regla de que
si se establece una acción dentro del término prescrito en la póliza,
pero se desestima o no se sigue por cualquier razón, y se establece
una acción posterior después de vencido el término fijado, aunque
tal vez inmediatamente que tiene lugar la desestimación o suspensión de la primera acción, la segunda no puede ser sostenida.   Las
cortes que han sostenido esta doctrina declaran que la póliza no prescribe que no se sostendrá ninguna primera acción a menos que se
establezca dentro del término fijado, pero que no se establecerá tal
acción a no ser que se inicie dentro del término.   La póliza se refiere a la acción en la cual se solicita el cobro, y tiene por objeto incluir cualquier acción comenzada por virtud de la póliza después
de vencido el término de prescripción la que de no ser por tal cláusula podría seguirse hasta una sentencia.   En un caso de Ohio, sin
embargo, se resolvió que cuando una póliza de incendio contiene la
condición de que 'todas las reclamaciones bajo esta póliza no podrán hacerse a menos que se sigan dentro de un año a partir de la
fecha del siniestro,' esa condición se cumple si dentro de un año se
establece la acción de buena fe con el objeto de hacer valer la reclamación y si el asegurado por justa causa abandona ese pleito y
prontamente sigue otro, aun cuando después de transcurrido un año,
él no está coartado en su 'derecho a recobrar'.   5 *Joyce on Insurance,* 5371.

''Si un estatuto de prescripción contiene una excepción que limita su aplicación, como, por ejemplo, cuando prescribe que si se
comenzare una acción dentro del período estatutorio, y por cualquier
razón el demandante consiente un sobreseimiento (*nonsuit*) puede
iniciar otra acción dentro de un año, en tal caso se ha sostenido que
la excepción permitirá al demandante que ha consentido un sobreseimiento en una acción por virtud de la póliza que siga una nueva
acción dentro de un año, no obstante estipularse en la póliza que no
se sostendrá ninguna acción a menos que se establezca dentro de un
término especificado después del siniestro.   Las cortes, sin embargo,
sostienen que tal excepción en el estatuto no tiene ningún efecto
sobre la estipulación en el contrato, y no evitará el impedimento del
contrato.   Los derechos de las partes han de determinarse por el
contrato, y como por sus términos el estatuto no tiene aplicación,

tampoco lo tendrían las excepciones al mismo." 5 *Joyce on Insurance,* 5372.

La única excepción a la regla general parece hallarse en casos en los cuales después de una desestimación de la primera acción sin culpa del demandante, se establece una segunda acción sin demora aunque después de vencido el término prescrito.

En el presente caso por lo menos pasaron tres semanas entre la fecha de la desestimación de la primera demanda en la Corte Federal, y el vencimiento del período fijado en la póliza.

El apelado alega lo siguiente:

". . . . A poco que estudien los Honorables Jueces la correspondencia cursada entre las partes sobre los particulares de esta reclación, que aparece transcrita en el récord, surgirá claramente el conjunto que la demandada aseguradora repetidamente pidió plazos y ofreció dilaciones al demandante para llevar a cabo supuestas investigaciones, bajo promesa siempre de que con ello se propendía a cumplir con las obligaciones del contrato con el demandante-apelado.

"Hasta el momento en que el demandante ocurrió por ante el Tribunal Federal las partes sostuvieron negociaciones que impidieron al reclamante de proceder judicialmente. Y desde el momento en que el demandante consintió en retirar su demanda de la Corte Federal la demandada-apelante aumentó sus diligencias para dilatar la acción judicial que eventualmente hubo de sobrevenir. ¿Cabría suponer que eran capciosas las súplicas propuestas al demandante y a sus abogados para detener la acción judicial, alegando que se procedía a exámenes de contabilidad y otros particulares de la reclamación?"

La transcripción de la evidencia contiene varios cientos de páginas. Una referencia vaga y general a la correspondencia contenida en tal récord no impone a esta corte ninguna obligación de analizarlo en busca de datos en apoyo de una manifestación igualmente vaga y general de lo que revelarían dichos datos al ser hallados.

Sin embargo hemos hecho algún esfuerzo por determinar

si la alegación de referencia en realidad tiene algún fundamento.

La correspondencia en cuestión parece consistir, en su mayor parte, de cartas y telegramas del apoderado del demandante y de sus abogados, con poco o nada de la demandada. Abarca un período de mayo a diciembre de 1922, con un intervalo de silencio que comprende un período de varios meses, o sea, de junio a octubre.

No encontramos ninguna indicación en la demanda o en esta correspondencia de tal conducta o actitud por parte de la demandada como la que ahora según parece se trata de imputarle por primera vez.

Al segundo día después del fuego las partes convinieron y otorgaron el siguiente contrato:

"Queda por el presente mutuaménte entendido y convenido por y entre Isaac Aboaf, de Ponce, P. R., de una parte, y la Phoenix Insurance Company, de Hartford, Connecticut, de la otra, que cualquier acción tomada por la segunda compareciente para investigar la causa del incendio o para investigar y determinar el valor de las pérdidas y daños causados a la propiedad del primer compareciente debido al fuego que se alega ocurrió el 27 de mayo, 1922, no dará por renunciada o invalidará ninguna de las condiciones de la póliza No. 5009 de la dicha Phoenix Fire Insurance Co., en poder del primer compareciente, y no se entenderá renunciado o invalidado ninguno de los derechos de cualquiera de las partes en este contrato.

"El objeto de este contrato es preservar los derechos de todas las partes en el mismo y prescribir lo necesario para una investigación del incendio y la determinación del importe de la pérdida o daño, sin tener en cuenta la responsabilidad del segundo compareciente.

"Firmado en triplicado en la ciudad de Ponce, P. R., hoy 29 de mayo de 1922.—(Firmado) Isaac Aboaf, por Manuel Royo, Asegurado.—Phoenix Insurance Co., F.A.C. Hastrup, por A. Stetting, Arbitro."

En junio 3, 1922, el árbitro fué informado de que el asunto había quedado en manos de los abogados del demandante. En junio 6 esta notificación fué confirmada por una carta de dichos abogados. En noviembre 29, 1922 el abo-

gado del demandante envió a la demandada el siguiente telegrama:

"Ponce, 2 Nov., '22.—Hastrup, San Juan, P. R.—Como abogados Isaac Aboaf necesitamos conocer motivos dilación asuntos urge liquidar reclamación sírvase contestar francamente para proceder de acuerdo con la ley y póliza.—Tous Soto & Pérez Marchand."

A éste siguió en diciembre 27 otro despacho, a saber:

"Ponce, 27 Dec. 1922.—H. C. Hastrup, San Juan.—Cliente Aboaf instrúyenos reclamar judicialmente pólizas. Injustificada demora liquidación equivale negativa compañía procederemos último corriente.—Tous Soto & Pérez Marchand."

El mero silencio en vista de tales comunicaciones difícilmente puede considerarse como causa de más demora en el establecimiento de la pretendida acción, y si la demandada contestando a esto dió alguna seguridad de un pago probable, arreglo o actuación favorable sobre la reclamación pendiente, o aún si demostró el deseo de recurrir a procedimientos dilatorios, es razonable asumir que el demandante hubiera producido dichas contestaciones en el juicio. Ciertamente que el demandante debió haber tenido conocimiento de que eran inútiles más negociaciones en la fecha en que fué establecida la acción en la corte federal, sino en la fecha del ultimátum telegráfico a que se acaba de hacer referencia como claramente se infiere en él y en todo caso él tuvo amplia oportunidad para establecer esta acción durante las tres semanas que transcurrieron entre la fecha de la desestimación del primer pleito y el vencimiento del término prescrito en la póliza.

Lo que la Corte Suprema de los Estados Unidos dijo en el caso de *Thompson* v. *Phoenix Insurance Co.,* 136 U. S. 287, 299 fué esto:

"Si, como las alegaciones de la demanda enmendada (*bill*) dan a entender, la omisión del demandante en presentar su demanda dentro del tiempo prescrito en la póliza, computando el término desde la fecha del fuego, se debió a la conducta de la compañía, no

puede por sí servir de limitación a los doce meses. Curtis v. Home Ins. Co., 1 Bissell 484, 487; Ide v. Phoenix Ins. Co., 2 Nissell 333; Grant v. Lexington Ins. Co., 5 Indiana 23, 25; Nickey v. Burlington Ins. Co., 35 Iowa 174, 180.''

En *Phoenix Ins. Co.* v. *Rad Bila Hora*, (41 Neb. 21) 59 N. W. 752, citado también por el demandante, la Corte Suprema de Nebraska al considerar una cláusula que fija un período de seis meses, se expresó así:

''La Corte instruyó al jurado sobre la cuestión en estos términos: 'Si vosotros llegáis a la conclusión en vista de la prueba de que el demandado por cualquier conducta o manifestación de su agente mediador, mientras trataba de solucionar dicha pérdida, hizo aquello que podía inducir a la creencia razonable por parte del demandante de que la reclamación se pagaría sin necesidad de un pleito, y que el demandante fué ·inducido razonablemente por tal conducta del demandado y proposición de arreglo a dejar de establecer la acción hasta después de seis meses de ocurrida dicha pérdida, entonces se considera que el demandado ha renunciado al derecho a insistir en exigir que tal pleito sea seguido dentro de seis meses a contar de la fecha de la pérdida.' La prueba tendió razonablemente a sostener esta interpretación. Las personas indudablemente autorizadas para representar la compañía hasta cierto límite y para determinados fines en el arreglo de la pérdida se probó que habían llevado a cabo negociaciones y hecho proposiciones de arreglo hasta después del vencimiento de los seis meses. No tenemos duda alguna de que, si tal disposición es de algún valor, la compañía puede, por su conducta, impedirse a sí misma el poder reclamar el beneficio de la prescripción; y que cuando la compañía, por tener miras tendentes a un arreglo amistoso, induce al demandante a paralizar una acción hasta después del vencimiento del término limitado, la compañía está por ello impedida de poder reclamar el beneficio de la limitación especial. Thompson v. Insurance Co., 136 U. S. 287, 10 Sup. Court 1019; Steel v. Insurance Co., 47 Fed. 863; Martin v. Insurance Co., 44 N. J. Law, 485, Ripley v. Insurance Co. 30 N. Y. 136; Blanks v. Insurance Co., 36 La. Ann. 599; Insurance Co. v. McGregor, 63 Texas 399; Bish v. Insurance Co., 169 Iowa, 184, 28 N. W. 553; Insurance Co. v. Myer, 93 Ill. 271. Todos los casos antes citados reconocen enteramente el principio y sostienen la instrucción dada por la corte sentenciadora. Algunos de ellos declaran que, bajo los hechos de los casos que se consideran, no existió

ningún impedimento; pero aquellos casos eran o bien donde existía
una negativa de responsabilidad en unión de un ofrecimiento de
transacción, casos donde había distintas negativas de responsabili-
dad, siguiendo a las negociaciones para una transacción y dentro de
tal período que había tiempo razonable después de dicha negativa
para establecer la acción con anterioridad al vencimiento del tér-
mino de prescripción.''

También se nos hace referencia a los casos de *McKay* v.
*Insurance Co.,* 35 Iowa, 174, 14 Am. State Rep. 474. No te-
nemos a mano el tomo 35 de Iowa Reports y no encontramos
el caso en el volumen 14 Am. State Rep.

Los demás casos que han sido citados para demostrar que
la causa de acción no surgió hasta después de la negativa
a pagar son los siguientes: *Firemen's Fund Insurance Co.*
v. *Buckstaft,* 38 Neb. 150, 56 N.E. 697, 41 Am. St. Rep. 727;
*Geeman Ins. Co.* v. *Davis,* 40 Neb. 700, 59 N.W. 698; *Hong
Isling* v. *Ins. Co.,* 8 Utah 135, 30 Pac. 307; *Read* v. *Ins. Co.,*
103 Iowa 307, 72 N.W. 665, 64 Am. St. Rep. 180; *Case* v.
*Ins. Co.,* 83 Cal. 473, 23 Pac. 534, 8 L.R.A. 48.

Sobre este punto será bastante con decir que la apelante,
anticipando esta teoría, afirma que en el presente caso no
hay fundamento alguno en realidad para la aplicación de
tal doctrina y que a pesar de esta impugnación directa el
apelado no ha indicado ninguna cláusula de la póliza ni nin-
gún hecho en evidencia tendente a contradecir la reclama-
ción de la apelante en este sentido.

[2] La corte inferior debió haber declarado con lugar la
excepción previa a la demanda y apareciendo aún más claro
de la evidencia que de la demanda misma que la acción es-
taba prescrita, no debió haber dictado sentencia a favor del
demandante sobre los méritos.

El error, de existir alguno, al admitir la certificación
del secretario de la corte de testamentaría (*surrogate*) trae-
ría por consecuencia únicamente que se ordenara la celebra-
ción de un nuevo juicio, y, en vista de las conclusiones a que

se ha llegado con respecto a la cuestión precedente y a otras más fundamentales, no es necesario que se discuta.

La cláusula 8 de la póliza es como sigue:

"Artículo 8.—Si, en el curso del contrato, sobrevinieren una o varias de las modificaciones consignadas en el presente artículo, el asegurado no tendrá derecho a ninguna indemnización sobre los objetos que hayan sufrido estas modificaciones, a no ser que, anteriormente al siniestro, haya obtenido el consentimiento escrito para dichos cambios, consignado en la póliza por la Compañía o por sus representantes apoderados.

"(*a*) Cambios o modificaciones en el comercio o en la industria ejercitados en los edificios asegurados o que contengan los objetos asegurados: cambios o modificaciones cualesquiera del destino o de utilización de dichos edificios o de sus condiciones especiales, pudiendo aumentar los peligros de incendio."

Que el asegurado sin el conocimiento y consentimiento de la demandada subarrendó una parte del edificio donde están los efectos asegurados y que el subarrendatario guardaba en la parte del edificio así subarrendado cantidades considerables de alcoholina, que es un substituto de la gasolina y usado como tal en automóviles, es cuestión que no está abierta a discusión.

La única contención del apelado parece ser que el fuego no se originó ni llegó a la parte del edificio donde tal materia inflamable se guardaba.

No se cita ninguna autoridad para sostener la proposición de que en tales circunstancias la cláusula en cuestión es inaplicable e ineficaz no obstante el hecho de que la apelante aquí también anticipó esta indicación, citando en el alegato los casos de *Bastian* v. *British Am. Ins. Co.*, 143 Cal. 287; (77 Pac. 63); *Williams* v. *Peoples Fire Ins. Co.*, 57 N.Y. 274; 26 C. J. 220.

[3, 4] La cláusula 13 de la póliza dice lo siguiente:

"Artículo 13.—En el caso de que la reclamación de daños presentada por el asegurado fuera de cualquier manera fraudulenta; si, en apoyo de dicha reclamación, se hicieran o utilizaran declara-

·ciones falsas; si se emplearan medios o documentos engañosos o dolosos por el asegurado o por terceras personas obrando en interés de éste, a fin de realizar un beneficio cualquiera con motivo de la presente póliza; si el siniestro hubiera sido voluntariamente causado por el asegurado o con su complicidad; si el asegurado o cualquier otra persona obrando en interés de éste, pusiera obstáculo a que la Compañía ejercitase los derechos estipulados en el artículo 12, o tratase de impedirlo; en el caso que la Compañía rechazara la reclamación de daños que se le hiciera, si no se entablara una acción judicial civil ante los tribunales en los tres meses siguientes al día de su negativa de admitir la reclamación, o al de la fecha del dictamen del o de los árbitros o del árbitro tercero, siempre que tuviera lugar un arbitraje con arreglo al tenor del artículo 18 de estas condiciones, el asegurado o sus derecho-habientes quedarían privados de todo derecho procedente de la presente póliza.''

El demandante presentó una reclamación por la cantidad total especificada en la póliza, manifestando que el valor de la mercancía que tenía en la fecha del fuego ascendía a $14,827 y algunos centavos. Lo que quedaba de esta mercancía después del fuego no podía valer una décima parte de esa cantidad antes del fuego y poco o nada de valor fué en realidad destruído.

El apoderado del demandante, contestando bajo juramento un interrogatorio hecho por la demandada respondió en forma negativa a la siguiente pregunta: ''¿Había gasolina, alcohol, pólvora, dinamita o cualquier otro explosivo depositado en el edificio ocupado por Ud?''

En la parte subarrendada del edificio había un envase de treinta galones del cual se sacaba alcoholina y vendía al detalle. También había un *drum* mayor de cien galones del cual se llenaba de cuando en cuando el envase menor.

La prueba indica persuasivamente una explosión de la gasolina o kerosina en el piso superior del edificio ocupado por y bajo el control exclusivo del asegurado como causa inmediata del fuego.

El sistema de llevar los libros empleado y la forma en que los llamados libros se llevaban no era tal que inspira-

ran confianza ante los hechos revelados como consecuencia
de la pronta extinción del fuego.

La única inferencia lógica a que puede llegarse de to-
das las circunstancias es la de una deliberada intención de
defraudar.

"Existe generalmente una disposición en las pólizas de aseguro
de incendio de que cualquier fraude o juramento falso del asegu-
rado relativo a la pérdida, o en las pruebas de pérdida, anulará
cualquier derecho a recobrar por virtud de la póliza.   Tal disposi-
ción es válida y puede hacerse cumplir, y para defenderse por este
fundamento el asegurador no está obligado a devolver al asegurado
la prima que ha pagado. *De conformidad con esto una fraudu-
lenta valoración excesiva en las pruebas o declaraciones de pérdida
anulará el cobro bajo la póliza.*"   26 C. J. 382.

"Aunque se ha resuelto que un agente no es un representante
legal del asegurado dentro del precepto de la póliza que lo elimina
en caso de fraude o juramento falso por parte del asegurado o sus
representantes legales, sin embargo, el fraude o falso juramento por
parte de un agente a quien el asegurado ha delegado el deber de
presentar pruebas de pérdida generalmente puede imputarse al ase-
gurado y por consiguiente anular el cobro."   26 C. J. 386, y casos
allí citados.

Que la corte inferior incurrió en error como se indica en
el sexto señalamiento de error se desprende del hecho de
que quedó tan poco después del fuego y que menos fué con-
sumido por él.

[5] La póliza prescribía que:

"Artículo 7.—A. menos que existan en la póliza estipulaciones
expresas que las garanticen, quedan excluídos del presente seguro:

    \*       \*       \*      \*      \*      \*      \*

"H.—Las pérdidas o daños causados por cualquier explosión.
Se entiende, sin embargo, que la Compañía responderá, al igual de
los causados por el incendio, de los daños y pérdidas que causara la
explosión del gas de hulla para el alumbrado o para cualquier uso
doméstico, en cualquier edificio que no dependa de una fábrica de
dicho gas, y que no sirva en modo alguno a su fabricación."

Si el demandado sería o nó responsable por la pérdida
ocasionada por fuego originado por una explosión de gaso-

lina, o sea, en el presente caso, a falta de otras condiciones, es cuestión que no necesita resolverse.   Pero véase a 26 C. J. 344 y 345.

En vista de las conclusiones a las cuales ya se ha llegado y en interés de la brevedad, nos abstenemos de discutir los señalamientos 8, 9 y 10 en que se funda la apelante para solicitar la revocación de la sentencia.

Una llamada "exposición del caso, y opinión," después de. expresar todas las alegaciones en totalidad, nombres de los abogados que comparecieron en el juicio y el hecho de que la prueba fué presentada por ambas partes, continúa en esta forma:

"La corte, como resultado de la evidencia practicada por ambas partes, apreciada en conjunto, y vistas la ley y la jurisprudencia aplicables al caso, la corte es de opinión que la ley y los hechos están en este caso a favor del demandante y en contra de la demandada, y consecuentemente debe dictar, como por la presente dicta sentencia declarando con lugar la demanda en todas sus partes, y condenando como condena a la demandada The Phoenix Fire Insurance Company a pagar al demandante Isaac Aboaf substituído. por sus administradores judiciales Irwin Allen Leher y Samuel Isaacs, la suma reclamada de once mil dollares ($11,000) más intereses legales sobre dicha suma desde la interposición de la demanda. hasta su completo pago, más las costas de este pleito.—Regístrese esta. sentencia en el libro correspondiente de esta corte, y oportunamente: expídase el necesario mandamiento para hacerla efectiva."

A falta de algo más específico a manera de conclusiones o más explicativo en forma de razonamiento, apenas podemos explicarnos la sentencia dictada por la corte inferior y, como ya hemos dicho, el alegato del apelado sólo suministra alguna luz sobre lo que puede haber tenido en consideración el juez de distrito.

Algunos meses antes del fuego se notificó al asegurado que si se quedaba ocupando el edificio sería como arrendatario a voluntad del arrendador.   Dentro de las circunstancias y para obtener una rebaja en el canon manifestó entonces que estaba liquidando una mercancía vieja de la cual

sólo quedaba algo. Poco después al recibir la notificación de abandonar el sitio y saber que ciertos competidores en los negocios ocuparían el local cuando se desocupara, Aboaf manifestó que nunca desocuparía mientras viviera y que los arrendatarios en perspectiva jamás ocuparían el local.

La prueba en conjunto indica concluyentemente haber tenido lugar un fuego o incendio intencional así como un fraude deliberado y falsa representación en las negociaciones que siguieron.

Si los llamados libros pudieron ser considerados o nó como un cumplimiento substancial con los términos de la póliza no habiendo habido fundamento de sospecha, es otra cuestión que no necesita ser ahora resuelta.

*Debe revocarse la sentencia apelada* y dictarse sentencia declarando la demanda sin lugar con las costas al demandante.